# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MICHAEL M. BROOKS, JR., et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-18-2299** |
| **CAMA SELF DIRECTED IRA, LLC, et al.,** | * | |
| **Defendants.** | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM</u>

Michael and Stasia Brooks ("Plaintiffs") filed suit against multiple defendants alleging violations of the Fair Debt Collection Practices Act (FDCPA) and state law stemming from attempts to collect payments on a home equity loan and to foreclose on their residence. Plaintiffs seek compensatory, statutory, and declaratory relief. Defendants Gerald O'Brien, the substitute trustee who initiated foreclosure, and John Hanrahan, O'Brien's lawyer in the state foreclosure action (collectively, the "Foreclosure Defendants"), filed a motion to dismiss. (Mot. Dismiss, ECF No. 5.) Defendants Cama Plan SDIRA FBO R1551124-02, the purported noteholder ("Cama 15"), SN Servicing Corporation, the loan servicer ("SN Servicing"), Cama Self Directed IRA, LLC ("Cama"), and Cama Plan SDIRA FBO R090930-01 ("Cama 09") (collectively, the "Cama Defendants") filed a separate motion for judgment on the pleadings. (Mot. J. Pleadings, ECF No. 18.) Both motions are fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, both motions will be granted in part and denied in part.

## I. Background[1]

The plaintiffs in this case are Michael M. Brooks, Jr., and Stasia V. Brooks. In 2005, Ms. Brooks executed an Equity Reserve Agreement with a $189,420.00 line of credit with National City Bank for "personal, family and/or household purposes." (Compl. ¶¶ 11–12, ECF No. 1; *see also* Note at 1, Compl. Exh. 1, ECF No. 1-7.[2]) The Note was secured by a lien on the Brookses' home in Lutherville-Timonium, Maryland. (Compl. ¶ 13; Deed of Trust, Compl. Exh. 2, ECF No. 1-8 (executed by both Mr. and Ms. Brooks).)

In 2009, the Brookses experienced financial troubles, and they concede that they defaulted on the National City loan in July 2009. (Compl. ¶¶ 14–15.) In December 2009, National City sent a bill showing a total balance of $187,078.47 and stating, "[y]our account will be charged off unless payment is received immediately." (*Id.* ¶¶ 16, 20; National City Final Bill at 1–2, Compl. Exh. 3, ECF No. 1-9.) Plaintiffs made no further payments and received no further bills from National City. (Compl. ¶ 17.) Plaintiffs argue that, by charging off the debt and ceasing to send billing statements, National City waived the right to charge additional interest or fees on the debt. (*Id.* ¶¶ 16–19.)

At some time after 2009, National City merged with PNC Bank. (*Id.* ¶ 19.) As successor in interest to the loan, PNC attempted to collect in February 2013, sending Ms. Brooks a letter demanding payment on a total balance of $187,135.68—an amount equal to the balance stated on the final National City bill, plus a late fee of $57.21. (*Id.* ¶ 27; *compare* PNC Bank Letter at 1,

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to Plaintiffs. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (motion to dismiss under Rule 12(b)(6)); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (motion for judgment on the pleadings under Rule 12(c)).

[2] Exhibits relied on in the Complaint that are central to the claims for relief and the authenticity of which is not questioned can be considered on a motion to dismiss without converting it to a motion for summary judgment. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F. 3d 212, 234 (4th Cir. 2004)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts ordinarily examine . . . documents incorporated into the complaint by reference [on a Rule 12 motion] . . . .").

Compl. Exh. 4, ECF No. 1-10, *with* National City Final Bill at 1.) Plaintiffs, believing they did not have a loan with PNC Bank, made no payment and received no further communication from PNC Bank. (Compl. ¶ 28.) (Neither National City nor PNC Bank is a party to this case.)

The debt was subsequently transferred multiple times. On December 8, 2015, the Deed of Trust was assigned to Cama 09. (*Id.* ¶ 48; *see also* Record of Assignment at 1, Compl. Exh. 6, ECF No. 1-12.) On December 3, 2015, five days before the assignment to Cama 09, Cama 09 purported to assign the Deed to Cama 15. (Compl. ¶ 48; Record of Assignment at 2.) The assignment to Cama 15 was notarized two days before the date on which it was signed. (Compl. ¶ 48; Record of Assignment at 2.) According to Plaintiffs, these inconsistencies render the assignment defective, and, thus, "Cama 15 does not own the Note." (Compl. ¶ 48.)

In 2016, Plaintiffs hired a broker to refinance a separate property and discovered that the National City loan, which they believed had been consolidated during a 2011 modification process, had not been consolidated and that a separate lien continued to exist on their home. (*Id.* ¶¶ 21, 29–35.) Shortly after being contacted by Plaintiffs' broker, SN Servicing began sending bills to Ms. Brooks. (*Id.* ¶¶ 36–37; *see also* SN Servicing Bills, Compl. Exh. 5, ECF No. 1-11.) From July 2016 to March 2018, Ms. Brooks received bills from SN Servicing seeking between $59,199.19 and $82,245.76[3] in outstanding amounts, which included claims for unpaid interest dating back to July 2009. (*See* SN Servicing Bills at 1, 19.) The bills named Cama 15 as a sending entity. (*See, e.g.*, *id.* at 1; *see also* Compl. ¶ 41.) Plaintiffs allege that the interest and late fees charged on the bills are "obvious falsehood[s]," because the Cama Defendants had no right to collect interest and fees waived by National City. (Compl. ¶ 45.) Plaintiffs also contend that the Note and Deed of Trust became unenforceable in 2012 under a three-year statute of

---

[3]     Although the quality of the exhibit is poor and difficult to read, the Court is reasonably certain that the numbers quoted throughout this opinion accurately reflect what is on the statements.

limitations and that SN Servicing had "constructive knowledge" of that fact. (*Id.* ¶¶ 22–26, 38.) Further, they argue that SN Servicing and Cama 15 had no right to collect on the debt because of the defects in assignment (*id.* ¶ 48) and because Cama, Cama 09, and Cama 15 were not licensed under Maryland debt collection laws (*id.* ¶¶ 42–44).

In October 2016, Cama 15 appointed Gerald O'Brien as substitute trustee on the Deed of Trust. (Deed of Appointment, Compl. Exh. 6 at 3–4.) According to Plaintiffs, the appointment was a "legal nullity" because of defects in the assignment to Cama 15. (Compl. ¶¶ 48–50.)

In September 2017, O'Brien docketed a foreclosure in the Circuit Court in Baltimore County, with Hanrahan as his lawyer. (*Id.* ¶ 46; *see also* Foreclosure Docket at 1, Mot. Dismiss Exh. D, ECF No. 5-6.[4]) Plaintiffs did not receive notice of the foreclosure until early 2018. (Compl. ¶ 47.) Plaintiffs argue that Defendants had no right to foreclose because of the lack of licenses (*id.* ¶¶ 51–52), the assignment defects (*id.* ¶ 52), and the statute of limitations (*id.* ¶ 53).

Plaintiffs also allege that the affidavit of default filed in conjunction with the foreclosure is "replete with deliberate misstatements, misrepresentations and omissions" about the amounts owed and the legal status of the debt. (*Id.* ¶ 54.) Plaintiffs contest the claims for $182,727.00 in unpaid principle, for $99,488.59 in unpaid interest, for $5,035.00 in late fees, and for $3,040.00 in legal fees. (*Id.*; *see also* Affidavit of Default at 2, Compl. Exh. 7, ECF No. 1-13.) They also contend that the amount to cure, $53,659.09, is "random to the point of recklessness," and that, because of a superior lien, foreclosure is "not based on business judgment." (Compl. ¶¶ 54–55.)

---

[4]     At the request of all parties, the Court will take judicial notice of the docket of the state court foreclosure proceeding. (*See* Mot. Dismiss Mem. at 3 n.2, ECF No. 5-1; Mot. J. Pleadings Mem. at 3–4, ECF No. 18-1; Opp'n Mot. J. Pleadings at 2, ECF No. 19-1.)     *See* Fed. R. Evid. 201(d) (mandatory judicial notice); *Tellabs*, 551 U.S. at 322 (stating that courts ordinarily consider "matters of which the court may take judicial notice" on a motion to dismiss); *Colonial Penn Ins. Co. v. Coil*, 887 F.3d 1236, 1239 (4th Cir. 1989) (quoting 21 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence, § 5106 (1977)) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

A copy of the docket is provided as Exhibit D to the Foreclosure Defendants' motion to dismiss. (ECF No. 5-6.) The docket is also available by search at http://casesearch.courts.state.md.us/casesearch/ (last visited Jan. 23, 2019) (available by searching case number 03C17009022).

Plaintiffs allege that they incurred over $10,000 in attorney's fees and suffered "emotional distress and mental anguish" as a result of Defendants' violations. (*Id.* ¶¶ 56–58.)

The Complaint puts forward five counts: Count I seeks a declaratory judgment that the Note and Deed of Trust are "unenforceable, and of no legal force or effect" (*id.* ¶ 59); Count II claims violations of the Fair Debt Collection Practices Act (FDCPA) (*id.* ¶ 60); and Counts III through V claim violations of Maryland law (*id.* ¶¶ 61–63).

## II. *Legal Standard*

Before the Court are the Foreclosure Defendants' motion to dismiss under Rule 12(b)(6) and the Cama Defendants' motion for judgment on the pleadings under Rule 12(c). The same standard governs motions under both rules. *See Walker v. Kelly*, 589 F. 3d 127, 139 (4th Cir. 2009); *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 623, 624 (D. Md. 2016).

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Courts must "accept the well-pled allegations of the complaint as true, . . . constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted)

(quoting *Twombly*, 550 U.S. at 555, 557). Courts need not accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. *Analysis*

### A. *Sufficiency of Factual Allegations*

Before turning to the specific counts alleged, the Court will first address the basic sufficiency of the factual allegations with respect to Cama and Cama 09.

There are few allegations specific to these Defendants. Cama is alleged to be a Pennsylvania LLC, and Cama 09 an "unknown legal entity." (Compl. ¶¶ 5–6.) Both are alleged to be "collectors" under relevant statutes. (*Id.*) Cama 09 is also alleged to have made a defective assignment of the Deed to Cama 15. (*Id.* ¶ 48.) All other allegations lump these Defendants together, as acting collectively with others. Plaintiffs allege that the Cama Defendants collectively "caused demands for payment" to be sent (*id.* ¶ 44), that the foreclosure was "a collaborative effort on the part of [all] Defendants, jointly and severally" (*id.* ¶ 46), that all Defendants "had at least constructive knowledge" of legal defects in the foreclosure (*id.* ¶ 52), and that they knowingly omitted material facts from the foreclosure (*id.* ¶ 53). These allegations are insufficient to create an inference that Cama or Cama 09 would be legally responsible for any of the alleged violations. According to the Complaint, Cama 15 is the entity holding itself out as the noteholder and on whose behalf the foreclosure suit was initiated. (*Id*. ¶¶ 41, 49.) The billing statements name only Cama 15 and SN Servicing. (*E.g.*, SN Servicing Bills at 1.) Plaintiffs allege no specific action taken by Cama or Cama 09 with respect to either the bills or the foreclosure, and there are no allegations about the legal relationship of either Defendant to Cama 15 or SN Servicing. Without such facts, the Court cannot plausibly infer that Cama or Cama 09 would be legally responsible, even if statutory violations occurred. The allegation

about Cama 09's role in the purportedly defective assignment does not give rise to a plausible claim, either. If Plaintiffs' argument is correct, Cama 09 might be the true noteholder, but that fact alone would not make it responsible for Cama 15's attempts to collect. Because Plaintiffs failed to allege facts about Cama or Cama 09 that "raise the right to relief above a speculative level," *Twombly*, 550 U.S. at 555, all claims against these Defendants will be dismissed.

The Court will next address the allegations against the remaining Cama Defendants (Cama 15 and SN Servicing) and against the Foreclosure Defendants, taking each count in turn.

### B.    *Declaratory Judgment (Count I)*

In the first count, Plaintiffs seek a declaration that the "Note and Deed of Trust are unenforceable, and of no legal force or effect." (Compl. at 12.) The Anti-Injunction Act (AIA) does not permit this Court to issue such a declaration, even if Plaintiffs were to succeed on their other federal or state claims.[5]

The AIA limits the power of federal courts to enjoin or stay state court proceedings. 28 U.S.C. § 2283. In a 2015 case, Judge Grimm succinctly explained why the AIA similarly bars declaratory judgments in cases where plaintiffs challenge a foreclosure under the FDCPA:

> "[W]here the Anti-Injunction Act bars an injunction[,] it 'also bars the issuance of a declaratory judgment that would have the same effect as an injunction.'" *Lovett v. Deutsche Bank Nat'l Trust Co.*, No. 12–1816–MBS–SVH, 2013 WL 841679, at *6 (D.S.C. Feb. 12, 2013) (quoting *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 (4th Cir. 2004) . . . . This is because "'even if a declaratory judgment is not used as a basis for actually issuing an injunction, declaratory relief alone has virtually the same practical impact as a formal injunction would.'" *Id.* (quoting *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). For example, if a plaintiff requests "a declaration that the [plaintiff's] mortgage and note are unenforceable," the request "preempts the foreclosure and has 'the same effect' as [a] request for an injunction to prevent foreclosure; both 'result in precisely the same interference with and disruption

---

[5]    Defendants did not make this argument, but courts may consider obstacles to exercising jurisdiction under the AIA *sua sponte. See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 n.4 (D. Md. 2015).

of state proceedings that the long-standing policy limiting injunctions was designed to avoid.'" *Id.* (quoting *Samuels*, 401 U.S. at 72).

*Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015).

The remedy sought by Plaintiffs in Count I—a declaration that the Note and Deed of Trust are "unenforceable" and "of no legal force or effect" (Compl. at 12)—would have "the same effect" as a request for an injunction to stay the foreclosure. *Samuels*, 401 U.S. at 72; *see also Jones v. Specialty Lending Grp.*, Civ. No. RWT-17-1577, 2017 WL 6997840, at *1 (D. Md. June 12, 2017) (holding that the AIA bars injunctive relief to prevent foreclosure); *Hayes v. JP Morgan Chase Bank*, No. 13–1884–JFA, 2014 WL 4198897, at *5 (D.S.C. Aug. 20, 2014) ("Plaintiff's request to declare the mortgage and note unenforceable runs afoul of the [AIA]."). Thus, the Court cannot consider the claim for declaratory judgment. Count I will be dismissed.

### C.   Fair Debt Collection Practice Act (FDCPA) (Count II)

Count II of the Complaint alleges violations of the FDCPA. Plaintiffs claim that, in attempting to collect on the debt and foreclose on their home, Defendants violated the Act by making "false representation[s] of . . . the character, amount, or legal status of [a] debt," 15 U.S.C. § 1692e(2), by "threaten[ing] to take [an] action that cannot legally be taken," 15 U.S.C. § 1692e(5), and by "us[ing] unfair or unconscionable means to . . . attempt to collect [a] debt," 15 U.S.C. § 1692f. The Court concludes that Plaintiffs plausibly alleged that the Foreclosure Defendants materially misrepresented the amount and legal right to collect interest and late fees, in violation §§ 1692e(2) and (5), and sought to collect interest not "expressly authorized" by the Note, in violation of § 1692f(1). All other FDCPA claims will be dismissed.

#### 1.   Statute of Limitations

Defendants argue that Plaintiffs' FDCPA claims are barred under the one-year statute of limitations. 15 U.S.C. § 1592k(d). Plaintiffs filed suit on July 27, 2018. The Cama Defendants

argue that the clock started when they sent "written notice" of attempts to collect in 2016. (Mot. J. Pleadings Mem. at 15, ECF No. 18-1.) The Foreclosure Defendants rely on a notice of intent to foreclose mailed in March 2016. (Mot. Dismiss. Mem. at 8, ECF No. 5-1.)

A FDCPA claim accrues on "the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *McGhee v. JP Morgan Chase Bank, N.A.*, Civ. No. DKC-12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012)). However, under the discovery rule, the claim does not accrue until the plaintiff has reason to know of the violation. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 760 (D. Md. 2012) (holding FDCPA claim accrued for limitations purposes upon notice of the allegedly fraudulent foreclosure), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) (per curiam) (unpublished).

In this case, Plaintiffs alleged they did not learn about the foreclosure until early 2018.[6] (Compl. ¶ 47.) However, at least with respect to the Cama Defendants, the alleged FDCPA violations in the foreclosure are "the same type" of violations alleged with respect to the bills sent after July 2016. *McGhee*, 2013 WL 4495797, at *7 n.10. For both the foreclosure and the earlier bills, Plaintiffs claim that the Cama Defendants had no legal right to collect and that they misrepresented the amount and legal status of the debt. Plaintiffs concede receipt of the 2016 bills. (Compl. ¶ 37.) Plaintiffs therefore had notice of the alleged violations by the Cama Defendants more than a year before filing suit. Because subsequent violations do not re-set the limitations clock, Plaintiffs' FDCPA claims against the Cama Defendants are time-barred.

However, the limitations period did not begin to run on claims against the Foreclosure Defendants until later. Plaintiffs put forward no allegations suggesting that O'Brien or Hanrahan

---

[6] Plaintiffs attached a portion of a notice of intent to foreclose dated March 2016 to their Complaint, but they do not concede having received it at that time; rather, they allege that the notice was included as part of the state foreclosure action. (Compl. ¶ 54(5) (referring to Compl. Exh. 9, ECF No. 1-15).)

could be liable for the allegedly fraudulent 2016 bills. Plaintiffs do not allege that they were involved with those bills at all. The first alleged action for which the Foreclosure Defendants could conceivably be liable to Plaintiffs is filing the state foreclosure suit. (*Id.* ¶ 46.) Both the date of filing (September 2017) and the date of notice (early 2018) are within one year of this suit. Therefore, the FDCPA claim against the Foreclosure Defendants is not time-barred.

### 2. *Violations of § 1692e*

In a FDCPA claim, Plaintiffs must allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector[,] . . . and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart*, 859 F. Supp. 2d at 759 (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005)).

Plaintiffs' allegations satisfy the first two elements. An attempt to foreclose qualifies as debt collection activity, and the definition of "debt collector" encompasses substitute trustees initiating foreclosures and lawyers conducting "debt-collecting activity [via] litigation." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007); *see also Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378–79 (4th Cir. 2006). As to the third element, Plaintiffs allege that the foreclosure violates § 1692e(5) because there is no legal right to foreclose and that it contains material misrepresentations, in violation of §§ 1692e(2) and 1692e(5).

### a. *Alleged Illegality of the Foreclosure*

Plaintiffs claim there was no right to foreclose for three reasons: first, because of a three-year statute of limitations; second, because defects in the assignment mean that Cama 15 is not the true noteholder and did not have authority to appoint O'Brien as trustee; and third, because Defendants lack a license under the Maryland Collection Agency Licensing Act (MCALA), Md. Code Ann., Bus. Reg., § 7-301(a). None of these arguments succeeds.

In their first argument, Plaintiffs rely on a Maryland law establishing a three-year statute of limitations for all "civil action[s] at law . . . ." Md. Code Ann., Cts. & Jud. Proc. § 5-101.[7] According to Plaintiffs, the limitations period began to run when they first defaulted on the loan in 2009 and expired three years later in 2012. (Compl. ¶¶ 22–25.) A fatal flaw in this argument is that Maryland does not apply a statute of limitations to foreclosures, which are actions in equity, not actions at law. *See Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 360 (Md. 2007) ("Mortgage foreclosure is an equitable remedy in Maryland."); *Kirsner v. Hammond*, 261 A.2d 159, 160 (Md. 1970) (citing *Cunningham v. Davidoff*, 53 A.2d 777, 781 (Md. 1947)) (applying a rebuttable presumption of payment after twenty years, but no statute of limitations, in mortgage foreclosures). Section 5-101 by its terms applies only to actions *at law*; it is therefore inapplicable. Plaintiffs' statute of limitations argument thus fails.

Plaintiffs' next argument similarly fails under general principles of Maryland law. Plaintiffs contest Cama 15's authority to appoint O'Brien as trustee because of two defects in the assignment: first, Cama 09 purported to assign the Deed of Trust to Cama 15 five days before the Deed was assigned to Cama 09; and second, the purported assignment to Cama 15 was notarized two days before it was signed. (Compl. ¶ 48.) Even if Plaintiffs were correct that these inconsistencies render the assignment defective, under Maryland law, the assignment

---

[7]     The parties appear to agree that Maryland law governs this case, notwithstanding a choice-of-law provision in the Note electing Ohio law. (*Compare* Note at 4 (electing Ohio law), *with, e.g.*, Mot. Dismiss Mem. at 6–7 (citing Maryland common law on equitable foreclosures), *and* Mot. J. Pleadings at 9–10 (discussing Maryland law on assignee rights and obligations), *and* Opp'n Mot. J. Pleadings at 7 (citing Maryland law on assignment of mortgages).) Whether or not the choice-of-law provision will be enforced is a question of Maryland law. *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 457 (D. Md. 2005). In Maryland, a choice-of-law provision will be enforced "unless the chosen state 'has no substantial relationship to the parties or the transaction,' or if applying the 'law of the chosen state would be contrary to a fundamental policy' of Maryland." *R/C Theatres Mgmt. Corp. v. Metro Movies, LLC*, 44 F. Supp. 3d 626, 631 (D. Md. 2014) (citing *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 467 (4th Cir. 2011)); *see also Three M Enters.*, 368 F. Supp. 2d at 459 (holding provision electing Texas law unenforceable in franchise agreement concerning a franchisee located in Maryland). In this case, none of the current parties has any apparent connection to Ohio. Nor has any party sought to enforce the choice-of-law clause. The property underlying the dispute is in Maryland. *See, e.g.*, *Roach v. Jurchak*, 35 A.2d 817, 819 (Md. 1944) (describing the State's "plenary power" with respect to transfers of property interests within its borders). Given those considerations, the Court rules that that there is no substantial relationship to Ohio, and Maryland law applies.

would not be void, but merely *voidable*. *See Julian v. Buonassissi*, 997 A.2d 104, 119–120 (Md. 2010). This is true even of assignments based on fraud. *Id*. at 119 (quoting *Urner v. Sollenberger*, 43 A. 810, 811–12 (Md. 1899)) ("We have long recognized that contracts obtained by fraud are not absolutely void, but are 'voidable at the election of the parties affected by the fraud,' and 'binding until properly avoided.'"); *Harding v. Ja Laur Corp.*, 315 A.2d 132, 135 (1974) (Md. Ct. Spec. App. 1974) ("A deed obtained through fraud, deceit or trickery is voidable as between the parties thereto[.]"). Maryland courts only consider assignments to be null and void from the outset where they are based on outright forgery of the deed. *Julian*, 997 A.2d at 120; *Ja Laur Corp.*, 315 A.2d at 136. Because Plaintiffs do not allege forgery of the deed, the assignment could be voidable at most. If so, it would be voidable only by a party to the allegedly defective assignment—not by Plaintiffs. *Urner*, 43 A. at 811–12; *see also Bell v. Clarke*, Civ. No. TDC-15-1621, 2016 WL 1045959, at *2 (D. Md. Mar. 16, 2016) ("[M]ortgagors generally lack standing to attack transfers of their mortgages through assignments . . . to which they are not parties."); *120 W. Fayette St., LLLP. v. Mayor of Baltimore*, 43 A.3d 355, 368 (Md. 2012) (reaffirming that Maryland law only permits challenges by parties to a contract and intended third-party beneficiaries). Plaintiffs' theory would not render the foreclosure a nullity, nor give Plaintiffs a right to relief against the Foreclosure Defendants.

Plaintiffs' final argument rests on MCALA, a Maryland statute prohibiting a person from "knowingly and willingly do[ing] business as a collection agency in [Maryland] unless the person has a license." Md. Code Ann., Bus. Reg., § 7-301(a). If Defendants were required to have a license under MCALA and sought to collect without one, it could constitute a violation of the FDCPA. *See Fontell*, 870 F. Supp. 2d at 410; *Bradshaw v. Hilco Receivables, LLC*, 765 F.

Supp. 2d 719, 729 (D. Md. 2011); *cf. Finch v. LVNV Funding LLC*, 71 A.3d 193, 199 (Md. Ct. Spec. Apps. 2013) ("[A] judgment obtained by an unlicensed collection agency is void.").

However, Defendants were not required to have a license under MCALA, because the Maryland Court of Appeals recently held that MCALA's licensing scheme does not apply to the mortgage industry. *Blackstone v. Sharma*, 191 A.3d 1188, 1192 n.3 (Md. 2018). Plaintiffs appear to read *Sharma* narrowly. They rely on a second holding in the case, that foreign statutory trusts are not required to be licensed, *id.* at 1223, to argue that whether Defendants qualify for this foreign statutory trust exception is a question of fact not appropriate for resolution on a motion to dismiss. (Opp'n Mot. Dismiss at 14–15, ECF No. 13.) This Court does not agree with Plaintiffs' reading. Although the cases before the *Sharma* court involved foreign statutory trusts specifically, the Court of Appeals used explicit language when deciding that the mortgage industry *as a whole* was excluded: "This Court *holds* that [recent legislation] does not expand the scope of MCALA to the mortgage industry," *Sharma*, 191 A.3d at 1192 n.3 (emphasis added). Plaintiffs cite to no authority, before or after *Sharma*, in which a court applied MCALA to a mortgage foreclosure. *See, e.g.*, *Fontell*, 870 F. Supp. 2d at 409 (applying MCALA to homeowner's association fees); *Finch*, 71 A.3d at 195 (applying it to credit card debt). In light of the Court of Appeals' clear holding, this Court concludes that the foreclosure suit in this case did not require a license under MCALA.

Plaintiffs' claims under Count II predicated on the lack of a legal right to foreclose due to the statute of limitations, defects in title, and MCALA licensure, will be dismissed.

### 3. *Alleged Misrepresentations*

Plaintiffs also allege that the foreclosure action violated the FDCPA by misrepresenting the amount of the debt. (Compl. ¶ 54.) Such misrepresentations could constitute a violation of

the FDCPA's prohibition on false statements, § 1692e(2), and, to the extent that the false statements seek to collect amounts that there was no right to collect, a violation of the prohibition on threatening an action without a legal right to do so, § 1692e(5).

To establish a FDCPA violation based on a false statement, Plaintiffs must plausibly allege that the challenged statements were false and "material." *Stewart*, 859 F. Supp. 2d at 762; *Weisheit v. Rosenberg & Assocs., LLC*, Civ. No. JKB-17-0823, 2017 WL 5478355, at *6 (D. Md. Nov. 15, 2017). In the Fourth Circuit, "a representation is 'material' if it would affect a least sophisticated consumer's decision-making." *Weisheit*, 2017 WL 5478355 at *6; *see also United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir. 1996). Only misstatements concerning the amount or nature of the debt itself are material. *See, e.g.*, *Stewart*, 859 F. Supp. 2d at 764 (concluding that a misrepresentation was not material where it did not involve a "substantive error with respect to the debt or the timing of foreclosure"); *Lembach*, 528 F. App'x at 303 (affirming that a material misrepresentation must have a "connection to the debt at issue").

The Court will consider each alleged misrepresentation in turn. First, Plaintiffs argue that the foreclosure suit claims an unpaid principal balance of $182,727.00, which is inconsistent with various notices sent to them by SN Servicing. (*Compare* Compl. ¶ 54(1), *with* Rate Adjustment Notices at 5, Compl. Exh. 8, ECF No. 1-14 (showing a balance of $172,456.33 in April 2017), *and id.* at 6 (showing a balance of $164,934.41 in July 2018).) Although the amounts on the notices are approximately $10,000 to $18,000 lower than the amount claimed in foreclosure, Plaintiffs have not plausibly alleged that the lower balances are accurate and the higher balance false. To the contrary, Plaintiffs allege that the balance on the notices decreased by almost $8,000 without any payments being made. (Compl. ¶ 54(1).) If anything, this gives rise to an inference that the notices were incorrect. By contrast, the principal balance claimed in

foreclosure matches the balance on the bills sent by SN Servicing. (*Compare* Affidavit of Default at 2, *with* SN Servicing Bills at 1.) It is also consistent with statements sent by National City and PNC Bank, both of which claimed *total* balances approximately $4,000 higher than the unpaid principal claimed in the affidavit filed in the foreclosure. (*See* National City Final Bill at 1; PNC Bank Letter at 1.) Although the Court is required to view facts in the light most favorable to Plaintiffs at this stage of proceedings, the Court is not required to draw an inference that does not plausibly follow from the allegations. Here, Plaintiffs failed to allege facts suggesting that the foreclosure suit misrepresented unpaid principal amount.

Plaintiffs' allegations with respect to legal fees and the amount to cure also fail to support an inference of falsity. Plaintiffs argue that the claim for legal fees is a misrepresentation because "the legal action taken"—foreclosure—"is a nullity, illegal, or both." (Compl. ¶ 54(4).) The Court already rejected arguments challenging the right to foreclose, and the Complaint is devoid of any allegations suggesting that the legal fees are otherwise inflated or impermissible. Although Plaintiffs point out that the foreclosure is "the first time" Defendants sought such fees (*id.*), the Court cannot infer from that fact alone that the claim is false. Next, Plaintiffs argue that the asserted amount to cure is roughly half the total balance owed and is, therefore, "random to the point of recklessness." (*Id.* ¶ 54(5)). However, they allege no facts suggesting what an accurate right to cure should be or how it would properly be calculated under the Note. Without such "further factual enhancement," *Twombly*, 550 U.S. at 557, Plaintiffs' assertion that the legal fees and amount to cure are "misrepresentations" is conclusory.

By contrast, Plaintiffs do plausibly allege that the amounts listed as interest and late fees were false and material. The foreclosure suit claims $99,488.59 in interest for the period from July 2009 to April 2017, and $5,035.00 in late fees. (Compl. ¶¶ 54(2), 54(3).) According to

Plaintiffs, National City waived the right to charge new interest and fees when it charged off the account and ceased sending billing statements in December 2009. Once waived, Plaintiffs argue, a successor in interest could not reassert the right to collect those amounts. (Compl. ¶ 45.)

Plaintiffs' waiver theory relies on a federal regulation that requires creditors to send regular statements, with only a few, enumerated exceptions. 12 C.F.R. 1026.5(b)(2). One such exception is when "the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account." *Id.* Several federal courts have recognized FDCPA violations where a debt collector attempts to collect interest or fee amounts previously waived. *See, e.g.*, *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 452 (6th Cir. 2014) (reversing dismissal of FDCPA claim where plaintiffs plausibly alleged waiver of the right to collect interest); *Simkus v. Cavalry Portfolio Servs., LLC*, Civ. No. 11-7425, 2012 WL 1866542, at *4 (N.D. Ill. May 22, 2012) (recognizing FDCPA claim where defendant-assignee attempted to collect interest allegedly waived by its predecessor upon charge-off); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 526 (E.D. Mich. 2013) (same), *vacated on other grounds*, Civ. No. 11-11122, 2016 WL 7325655, at *1 (E.D. Mich. June 23, 2016) (granting joint motion to vacate). The cessation of monthly statements alone is not enough to establish waiver; rather, the totality of the circumstances must be sufficient to support a finding of waiver under state contract law principles. *LVNV Funding, LLC v. Mavaega*, 527 S.W.3d 128, 138 (Mo. Ct. App. 2017).

In Maryland, "[w]aiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right," and it may be express or "inferred from circumstances." *Woznicki v. GEICO Gen. Ins. Co.*, 90 A.3d 498, 506 (Md. Ct. Spec. App. 2014) (quoting *Hovnanian Land Inv. Grp., LLC v. Annapolis Town Centre at Parole,*

*LLC*, 25 A.3d 967, 983 (Md. 2011)). Plaintiffs in this case alleged sufficient facts to reasonably infer that National City charged off the debt: the final bill sent in December 2009 explicitly stated that the account "will be charged off unless payment is received immediately," and Plaintiffs made no further payments. (*Id.* ¶ 16–17; *see also* National City Final Bill at 2.) It is also reasonable to infer that charge-off was accompanied by an intentional relinquishment of the right to charge interest and fees. National City stopped sending billing statements after December 2009 (Compl. ¶ 17), which may be permissible under federal law if the creditor also ceases charging new interest and fees. *See* 12 C.F.R. 1026.5(b)(2). More importantly, the 2013 letter sent by PNC Bank, the first known successor in interest, indicated that no further interest or fees had been charged in the intervening thirty-eight months. (*Compare* National City Final Bill at 1 (listing a total balance of $187,078.47 plus a late fee of $57.21 if no payment was made), *with* PNC Bank Letter at 1 (listing a total balance equal to the 2009 balance plus $57.21).)

These facts are sufficient to infer that National City and/or PNC Bank intentionally relinquished their right to charge interest and fees after the account was charged off in 2009. Even if a later successor in interest, like Cama 15, retained the right to charge interest or fees *prospectively*, Plaintiffs plausibly alleged that there was no right to collect amounts dating back to December 2009 and, therefore, that the claim to such amounts in the foreclosure was a misstatement.[8] With over $100,000 in combined interest and late fees claimed, the Court also concludes that the misrepresentations were material.

---

[8]     The Cama Defendants argue that Plaintiffs' waiver theory rests on implied assignee liability, a concept rejected by Maryland courts. (*See* Mot. J. Pleadings at 9–10 (citing, *inter alia*, *Brown v. Bank of Am., N.A.*, Civ. No. AW-10-1661, 2012 WL 380145 (D. Md. Feb. 3, 2012)).) This argument mischaracterizes the waiver theory. Unlike in *Brown* and the other cases cited by Defendants, Plaintiffs do not seek to hold assignee-defendants liable for an original lender's misconduct; rather, they argue that the original lender could not have transferred to the assignee-defendants the right to collect interest and fees that the original lender had waived the right to collect on its own behalf. This is not a question of implied assignee liability; it is a question of whether the right to collect these amounts could have been assigned at all. The comparison to *Brown* and other assignee liability cases is inapt.

17

Accordingly, Plaintiffs plausibly alleged violations of §§ 1692e(2) and 1692e(5) related to the interest and late fees claimed in the foreclosure suit.

### 4. *Alleged Violations of § 1692f*

Plaintiffs' final FDCPA claim falls under § 1692f(1), which prohibits a debt collector from using "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f. Section 1692f provides a list of prohibited actions, including attempts to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). It also serves as a "catch-all" for unfair conduct not covered by another FDCPA provision. *Weisheit*, 2017 WL 5478355, at *7; *see also Stewart*, 859 F. Supp. 2d at 765 (quoting *Foti v. N.C.O. Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)) (describing § 1692f as "a means . . . 'to sanction improper conduct that the FDCPA fails to address specifically'").

Plaintiffs allege two violations of 1692f(1). First, they allege the foreclosure claimed a right to interest calculated at a fixed rate of 7.00%, whereas the Note provides for interest to be "calculated at a variable rate based on an index." (Compl. ¶ 54(2); Note at 1). Although the Note indicates that a 7.00% rate is potentially permissible (Note at 1 (stating a 7.00% rate as of August 23, 2005)), application of a single rate across the entire period between July 2009 and April 2017 is inconsistent with the Note's description of an index-based rate. It is also inconsistent with the rates listed in notices and bills sent by SN Servicing prior to foreclosure. (*Compare* Affidavit of Default at 2 (applying a 7.00% rate to the entire period between July 2009 and April 2017), *with* Rate Adjustment Notices at 5 (listing a 4.26% rate as of April 23, 2017), *and* SN Servicing Bills (listing a 3.75% rate in 2016 and 2017).) These facts suggest that the 7.00% rate applied in the affidavit of default was not authorized by the Note. Because this

allegation falls within a specific provision of the statute, Plaintiffs plausibly alleged a violation of § 1692f(1) with respect to interest. *Weishert*, 2017 WL 5478355, at *7.

Second, Plaintiffs allege that the $5,035.00 in late fees claimed as of April 30, 2017 does not accord with the Note, which indicates the right to charge a late fee of "the greater of 10% of the unpaid minimum payment or $40." (Compl. ¶ 54(3); *see also* Note at 2.) The late fee asserted in the foreclosure is indeed much higher than 10% of the unpaid minimum at the time of alleged charge-off. (*See* Final National Bank Bill at 1 (showing an unpaid minimum balance of $4,005.00).) It is also inconsistent with the late fees stated on bills sent prior to April 2017. (SN Servicing Bills at 1–7 (showing a "Prior Serv Late Chrg" of $3,731.00 in the bottom right of each bill and listing a $0.00 late fee in the "Payment Coupon" section).) These inconsistencies may suggest a misstatement as to late fees or an attempt to collect late fees from the period after National City's charge-off, when the right to such fees may have been waived. However, the Note also permits "an additional late payment fee for each billing cycle that your Line is past due." (Note at 2.) Given this broad wording in the Note, the Court cannot infer that the attempts to collect additional late fees were not "expressly authorized by the agreement creating the debt," 15 U.S.C. § 1692f(1), even if they may have be impermissible for other reasons, such as waiver. Because Plaintiffs have not plausibly alleged a violation of an enumerated provision of § 1692f, nor a violation "separate and distinct" from the misconduct alleged under § 1692e, *Stewart*, 859 F. Supp. 2d at 765, Plaintiffs' § 1692f claim with respect to late fees will be dismissed.

### D.  *State Law Claims*

Plaintiffs also put forward claims under three state statutes: the Maryland Consumer Debt Collection Act (MCDCA), the Maryland Consumer Protection Act (MCPA), and the Maryland Mortgage Fraud Protection Act (MMFPA). Many of these claims repeat arguments advanced

under federal law—including that foreclosure is time-barred, that the assignment to Cama 15 was defective, and that Defendants lack a debt collection license under MCALA. These claims fail for the same reasons they failed under federal law. *See supra* pp. 10–13.

Plaintiffs' remaining state law claims stem from the alleged misrepresentation of the amounts owed in billing statements and the foreclosure suit. These claims all sound in fraud and must meet heightened pleading requirements. Fed. R. Civ. P. 9(b) (requiring fraud to be pled with "particularity"); *see also Amenu-El v. Select Portfolio Servs.*, Civ. No. RDB-17-2008, 2017 WL 4404428, at *3–5 (D. Md. Oct. 4, 2017) (applying heightened pleading standards to claims under the MCDCA, MCPA, and MMFPA). Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (2d ed. 1990)). Although "knowledge and intent may be averred generally, this Court has consistently held that . . . allegations [must] have enough factual support to be at least plausible." *Zervos v. Ocwen Loan Servicing, LLC*, Civ. No. JKB-11-3757, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012).

As in the FDCPA analysis, Plaintiffs have not sufficiently alleged falsity with respect to the claimed principle amount, legal fees, or amount to cure. *See supra* pp. 14–15. However, the alleged misrepresentations of interest and late fees have been pled with requisite particularity: Plaintiffs point to the specific claims for interest and late fees on the affidavit signed by an officer of Cama 15 and filed as part of a foreclosure action instituted by O'Brien and Hanrahan, and in the bills sent on Cama 15's behalf by SN Servicing. (Compl. ¶¶ 45, 54(2), 54(3).) Thus, they adequately pled the "who, what, when, where, and how" of the alleged misrepresentations.

*Galante v. Ocwen Loan Servicing LLC*, Civ. No. ELH-13-1939, 2014 WL 3616354, at *9 (D. Md. July 18, 2014) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)). The Court will consider these allegations under the specific requirements of each state law.

### 1. MCDCA (Count III)

Under the MCDCA, a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Md. Code. Ann., Com. Law. § 14-202(8). Defendants must have acted with "knowledge as to the *invalidity* of the debt." *Stewart*, 859 F. Supp. 2d at 769; *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (rejecting MCDCA claims based on procedural errors in "collecting legitimate, undisputed debts"). "[K]nowledge can either mean actual knowledge or that the defendant acted with reckless disregard." *Stewart*, 859 F. Supp. 2d at 769 (citing *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004)). A "broad assertion" of knowledge without "facts in support of [the] allegation" is insufficient under the MCDCA. *Cooke v. Carrington Mortg. Servs.*, Civ. No. TDC-18-0205, 2018 WL 6323116, at *6 (D. Md. Dec. 3, 2018).

Here, Plaintiffs concede default, but they contest the validity of certain portions of the debt—the interest and late fees allegedly waived and the use of a flat 7.00% interest rate. Misrepresentation of the amount of debt due may violate the MCDCA. *See Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016) (per curiam) (unpublished) (recognizing MCDCA claim based on "inclusion of an unauthorized . . . charge"); *Allstate Lien & Recovery Corp. v. Stansbury*, 101 A.3d 520, 529–30 (Md. Ct. Spec. App. 2014) (upholding MCDCA claim based on an unauthorized processing fee in an otherwise valid lien).

Plaintiffs must also sufficiently allege facts from which the Court could infer that Defendants attempted to collect knowing that the amounts were unauthorized or with reckless

disregard of that fact. Plaintiffs allege that Defendants made "deliberate misstatements" in the foreclosure, indicating a "reckless indifference to the truth" (Compl. ¶ 54), and that Cama 15 and SN Servicing "knew that they were obliged as successors in interest" to recognize the prior waiver of interest and late fees (*id.* ¶ 45). Although these allegations, on their own, are largely conclusory, they are supported by additional facts alleged or incorporated by reference into the Complaint.

First, it is plausible to infer that Cama 15 as the noteholder, O'Brien as substitute trustee, and Hanrahan as his attorney, knew the content of the Note governing the debt—including the provision setting a variable, index-based interest rate, not a flat 7.00% rate—when they sought to collect via foreclosure. Bills sent on Cama 15's behalf in the fifteen months prior to foreclosure also consistently stated an interest rate of 3.75% and total amounts noticeably lower than the amounts claimed in foreclosure. (*Compare* Affidavit of Default (claiming more than $99,000 in interest and $5,000 in late fees as of April 30, 2017) *with* SN Servicing Bills at 7 (claiming approximately $64,000 in interest and $3,731 in late fees as of April 23, 2017).) These facts are sufficient to infer that Cama 15 and the Foreclosure Defendants knew or recklessly disregarded the risk that there was no right to collect some or all of the interest and late fees claimed.

Second, it is plausible to infer that Cama 15 as an assignee, and SN Servicing, as the loan servicer collecting on Cama 15's behalf, knew the scope of the rights that had been transferred to Cama 15 via assignment—including whether certain rights had been waived by predecessors. Defendants held themselves out as having knowledge of basic facts about the debt's history. (*See, e.g.*, Affidavit of Default at 2 (averring knowledge of the date of default and amounts owed); SN Servicing Bills at 1 (reporting a last payment in July 2009).) From those facts, Defendants also could have deduced the likelihood of waiver of some charges for certain

periods.  It is not enough to merely allege that Defendants "*should* have known" about waiver, *Fontell v. Hassett*, Civ. No. 10-1472, 2013 WL 4562368, at *2 (D. Md. Aug. 27, 2013) (emphasis added), *aff'd by* 574 F. App'x 278 (4th Cir. 2014) (per curiam).  However, mistake of law will not negate MCDCA liability.  *See Fontell*, 870 F. Supp. 2d at 407 ("[If] Defendants' ignorance . . . was a mistake of law, their professed lack of knowledge would not save them from liability[.]"), *motion to amend denied by* 2013 WL 4562368, at *3; *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999) (holding that the "term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law.").  Although the facts suggesting knowledge are somewhat slight, the Fourth Circuit has directed courts to "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of" the circumstances constituting alleged fraud.  *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (quoting *Harrison*, 176 F.3d at 784).  Considering this guidance and construing all facts in the light most favorable to Plaintiffs, the Court is satisfied that the allegations support an inference of knowledge or reckless disregard with respect to waiver of interest and late fees.

The motions will be denied with respect to Count III's claims that Defendants knowingly attempted to collect interest and late fees in invalid or unauthorized amounts.

### 2.  *MCPA (Count IV)*

The MCPA prohibits persons from making a "[f]alse . . . or misleading . . . representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" during the collection of consumer debts.  Md. Code Ann., Com. Law, §§ 13-301(1), 13-303(5). To make a claim under the statute, plaintiffs must allege "(1) an unfair or deceptive practice or

misrepresentation that (2) is relied upon, and (3) causes them actual injury." *Stewart*, 859 F. Supp. 2d at 768 (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

Plaintiffs' MCPA claim fails because they did not adequately allege reliance—that is, that the misrepresentation "substantially induced [their] choice." *Gibson v. Nationstar Mortg., LLC*, Civ. No. GJH-14-3913, 2015 WL 302889, at *4 (D. Md. Jan. 21, 2015) (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013)). Plaintiffs assert three bases for reliance: attorney fees incurred to defend against foreclosure; participation in mediation; and costs associated with filing the present lawsuit. (Opp'n Mot. Dismiss at 19.) But, there are no facts from which the Court could infer that these choices—to defend against foreclosure, undergo mediation, and file this lawsuit—were "substantially induced" *by the misrepresentations about interest and late fees*. *Gibson*, 2015 WL 302889, at *4 (quoting *Currie*, 950 F. Supp. 2d at 798); *see also Galante*, 2014 WL 3616354, at *26 (finding no reliance where plaintiffs admitted their actions were motivated by "want[ing] to remain in their home," not by the alleged fraud); *Bey v. Shapiro Brown & Alt, LLP,* 997 F. Supp. 2d 310, 319 (D. Md. 2014) (dismissing MCPA claim where the plaintiff "opposed the requests for payment" from the beginning).

Plaintiffs' claims under Count IV will be dismissed.[9]

### 3. *MMFPA (Count V)*

Plaintiffs' final claim is that Defendants violated the MMFPA, which prohibits "mortgage fraud." Md. Code Ann., Real Prop. § 7-402. "Mortgage fraud" is defined to include:

---

[9]     Even if Plaintiffs had alleged reliance, the MCPA claim against the Foreclosure Defendants would still be dismissed. The MCPA exempts "professional services" of lawyers. Md. Code Ann., Com. Law, § 13-104(1). Although Plaintiffs acknowledge this provision, they argue that it does not encompass "unprofessional conduct." (Opp'n Mot. Dismiss at 17.) That reading is inconsistent with case law rejecting claims against lawyers who initiate collection activities, even when those activities are alleged to have involved conduct violating the MCPA. *See, e.g.*, *Stewart*, 859 F. Supp. 2d at 768 (dismissing MCPA claim against lawyer defendants); *Hawkins v. Kilberg*, 165 F. Supp. 3d 386, 390–91 (D. Md. 2016) (collecting cases that construe the exemption "broadly").

> "any action by a person with the intent to defraud that involves. . . [k]nowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process[.]"

§ 7-401(d)(1). Courts consistently require plaintiffs to plead the elements of common law fraud, including reliance, in a MMFPA claim. *Galante*, 2014 WL 3616354, at *28 (collecting cases); *see also Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 921 A.2d 245, 254 (Md. 2007) (defining the elements of common law fraud). Plaintiffs' MMFPA claim thus fails for the same reason as its MCPA claim—they failed to plead facts suggesting reliance on the alleged misstatements.[10]

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting in part and denying in part the Cama Defendants' motion for judgment on the pleadings. (ECF No. 18.) All claims against Cama and Cama 09 will be dismissed. The motion for judgment on the pleadings will be denied with respect to the allegations under Count III that Cama 15 and SN Servicing violated the MCDCA § 14-202(8) by attempting to collect unauthorized or waived interest and late fees. All other claims against Cama 15 and SN Servicing will be dismissed.

An Order shall also enter granting in part and denying in part the Foreclosure Defendants' motion to dismiss. (ECF No. 5.) The motion to dismiss will be denied with respect to the claims under Counts II and III that the Foreclosure Defendants: violated the FDCPA §§ 1692e(2) and e(5) by making material misrepresentations about interest and late fees; violated

---

[10]     Defendants also argue that the MMFPA does not apply to foreclosures. (*See* Mot. Dismiss Mem. at 16–19; Mot. J. Pleading Mem. at 15–16.) Defendants cite *Cabrera v. Bank of America*, which held that post-closure debt collection is not part of the "mortgage lending process" under the MMFPA. Civ. No. RWT-13-1574, 2014 WL 1276236, at *4 (D. Md. Mar. 26, 2014). However, not all courts in this district agree with that interpretation. *See, e.g., Marchese*, 917 F. Supp. 2d at 469 (applying the MMFPA to post-closure loan activities); *Currie*, 950 F. Supp. 2d at 800 (same). The Court need not decide this question because, even if the MMFPA applied to foreclosure, the claim would still be dismissed for failure to plead reliance.

the FDCPA § 1692f(1) by seeking to collect interest at a rate not explicitly authorized by the Note; and violated the MCDCA § 14-202(8) by attempting to collect unauthorized or waived interest and late fees.  All other claims against the Foreclosure Defendants will be dismissed.

DATED this 31st day of January, 2019.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge